AO 106A (08/18) Application for a Warrant by Telephone or Other Reliable Electronic Means

# UNITED STATES DISTRICT COURT

for the

District of New Mexico

FILED

United States District Court
Albuquerque, New Mexico

Mitchell R. Elfers
Clerk of Court

| | |
|---|---|
| In the Matter of the Search of<br>*(Briefly describe the property to be searched<br>or identify the person by name and address)*<br><br>Firearms Located at Ricardo MENDEZ's Residence,<br>located at 412 Judith Lane SW, ABQ, NM 87121 | )<br>)<br>)<br>)<br>)<br>)<br>) | Case No.    24 MR 114 |

## APPLICATION FOR A WARRANT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location):*
See Attachment A, which is incorporated by reference.

located in the _____ District of _____ New Mexico _____ , there is now concealed *(identify the person or describe the property to be seized)*:
See Attachment B, which is incorporated by reference.

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

- ☑ evidence of a crime;
- ☑ contraband, fruits of crime, or other items illegally possessed;
- ☑ property designed for use, intended for use, or used in committing a crime;
- ☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 18 U.S.C. §§ 1951, 1952, 371;<br>666; 1343; 1346; 2 | Hobbs Act extortion under color of official right; Travel Act interstate travel or transportation in aid of racketeering enterprises; conspiracy; bribery; wire fraud; honest services wire fraud; and aiding and abetting. |

The application is based on these facts:

The affidavit of Special Agent Thomas Long is incorporated herein by reference.
The Court notes that paragraph 11 of the Affidavit explicitly incorporates the facts set forth in the Affidavit for Premises search.

- ☑ Continued on the attached sheet.
- ☐ Delayed notice of _____ days *(give exact ending date if more than 30 days:* _____ *)* is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

_____
*Applicant's signature*

SA Thomas D. Long / FBI
*Printed name and title*

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by
telephonically sworn and electronically signed    *(specify reliable electronic means)*

Date:    01/18/2024

_____
*Judge's signature*

City and state:  Albuquerque, NM

Honorable Karen B. Molzen, U.S. Magistrate Judge
*Printed name and title*

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

**AFFIDAVIT IN SUPPORT OF APPLICATION**

I, Thomas Long, Special Agent of the Federal Bureau of Investigation ("FBI"), being duly sworn, depose and state that:

**INTRODUCTION AND AGENT BACKGROUND**

1. I make this affidavit in support of an application under Rule 41 of the Federal Rules of Criminal Procedure for a warrant to search Ricardo MENDEZ's residence, located at 412 Judith Lane SW, Albuquerque, New Mexico (SUBJECT PREMISES 2), as further described in Attachment A, for the property more fully described in Attachment B.

2. I am a Special Agent ("SA") with the Federal Bureau of Investigation ("FBI") and have been since September of 2022. I am currently assigned to the Albuquerque Field Office ('AQ"), Transnational Organized Crime ("TOC") squad. During my employment with the FBI, I have conducted/participated in numerous investigations of suspected violations of Federal law, including Indian Country crimes, drug crimes, and crimes of violence. I have received training in how to conduct complex investigations and I have previously participated in the execution of arrest and search warrants involving Federal violations. My investigative training and experience include, but is not limited to, conducting surveillance, interviewing subjects, targets and witnesses, writing affidavits for and executing search and arrest warrants, managing confidential human sources ("CHS") and cooperating witnesses/defendants, issuing subpoenas, collecting evidence, and analyzing public records.

3.    To become an FBI Special Agent, I graduated from the FBI Academy, Basic Field Training Course ("BFTC"), in February of 2023. The program was 19-weeks and covered all aspects of investigating Federal crimes. Among other subjects, I received training on surveillance and counter-surveillance operations, counter-terrorism investigations, counter-intelligence operations, use of undercover employees, CHS operations, criminal law, and investigations involving Federal electronic surveillance statutes, to include Title III wiretaps, drug identification, search warrant executions, and vehicle stops.

4.    Prior to joining the FBI, I was a Special Agent with the United States Drug Enforcement Administration ("DEA"), United States Department of Justice ("USDOJ") and I was so employed from September 2017 to September 2022. As such, I was a law enforcement officer of the United States within the meaning of 18 U.S.C. § 2510(7), and I was empowered by law to conduct investigations and to make arrests for offenses enumerated in 18 U.S.C. § 2516.

5.    To become a DEA Special Agent, I graduated from the DEA Academy, Basic Agent Training, in January of 2018. The program was 19-weeks and covered all aspects of investigating drug trafficking cases. I received training on surveillance and counter-surveillance operations, undercover operations, confidential source operations, criminal law, and investigations involving Federal electronic surveillance statutes, to include Title III wiretaps, drug identification, search warrant executions, and vehicle stops.

6.    My experience as a Special Agent includes, but is not limited to, conducting surveillance, interviewing witnesses, writing affidavits for, and executing search warrants, and working with undercover agents and informants. I have received training and have experience in the investigation of multiple Federal violations, to include Federal drug and money laundering laws, and I have participated in multiple violent crime investigations to include violent gangs and

2

drug trafficking conspiracies, including via Title III wiretaps. I have also been the affiant, and supervising agent, of multiple Title III wiretap investigations. As a result, I am familiar with matters including, but not limited to, the means and methods used by persons and drug trafficking organizations ("DTO") to purchase, transport, store, and distribute illegal drugs, and to hide profits generated from those transactions. I also have experience in analyzing and interpreting drug codes and cryptic dialogue used by drug traffickers.

7.     Prior to my employment with the FBI and the DEA, I served for over six (6) years as a member of the New Mexico State Police ("NMSP"). As a member of the NMSP, I received training, and obtained experience, in the investigation of violations of the New Mexico State Criminal and Traffic Statutes, to include drug-related and violent crimes. Also, as an NMSP officer I served as a pilot, flight instructor, and commander of the NMSP Aircraft Section, within the organization's Special Operations Bureau. In that capacity I provided aerial support for, and participated in, numerous criminal investigations, narcotics operations, tactical team support, search and rescue operations, border security, to include surveillance of drug importation, and airborne patrol missions.

8.     The facts in this affidavit come from my personal observations, my training and experience, and information obtained from other agents and witnesses. This affidavit is intended to show merely that there is sufficient probable cause for the requested warrants and does not set forth all of my knowledge about this matter.

**RELEVANT STATUTES**

9.     This investigation concerns alleged violations of certain activities relating to the following federal crimes (the "TARGET OFFENSES"), or aiding and abetting such crimes:

   a. 18 U.S.C. § 1951 (Hobbs Act extortion under color of official right);

3

b.  18 U.S.C. § 1952 (Travel Act interstate travel or transportation in aid of racketeering enterprises);

c.  18 U.S.C. § 371 (conspiracy);

d.  18 U.S.C. § 666 (bribery);

e.  18 U.S.C. § 1343 (wire fraud); and

f.  18 U.S.C. §§ 1343, 1346 (honest services wire fraud).

10.    There is also probable cause to search the locations described in Attachment A for evidence, instrumentalities, contraband, and/or fruits of these crimes further described in Attachment B.

**FACTS ESTABLISHING PROBABLE CAUSE**

11.    This affidavit fully incorporates by reference the affidavit submitted in support of the search warrant to search Ricardo MENDEZ's residence, located at 412 Judith Lane SW, Albuquerque, NM 87121 (24-MR-81) (SUBJECT RESIDENCE 2).

12.    On January 16, 2024, United States Magistrate Judge Karen B. Molzen approved a federal search warrant to search Ricardo MENDEZ's residence pursuant to the warrant referenced above. On January 18, 2024, agents executed the warrant at SUBJECT RESIDENCE 2. During the course of the search, agents located a very large collection of firearms. There is probable cause to believe that the overall number of firearms (approximately 39) and the types of firearms indicate that Ricardo MENDEZ collects firearms. There is also probable cause to believe that, based on the large number of firearms and the likely high value of this collection, Ricardo MENDEZ was using proceeds from the criminal scheme to purchase firearms, including the ones located during the search of SUBJECT RESIDENCE 2.

13.     At this point, the exact value of the firearms is not known, and they will be submitted for further assessment in terms of their valuation following their seizure. Based on open-source information, however, there is probable cause to believe that several of the firearms are very valuable. For example, agents located a Thompson 1927A01 semi-automatic carbine in a hardshell case (commonly known as a Tommy gun). The hardshell case had a sticker written in cursive that stated "Thompson" on it (which, it is believed, was part of how it was sold to Ricardo MENDEZ). The inside of the case was a custom foam-cut out for the firearm and a circular drum magazine for .45 caliber ammunition. According to open-source information, this firearm has an estimated resale value of approximately $1,500. There were also various handguns which, according to open-source information, have estimated values exceeding $1,000 each. There are also numerous rifles also with estimated significant value. For example, there is a Windham weaponry 308 AR-10 rifle, which, based on open source information, has an estimated value of $1,500.

14.     Based on my training and experience, and the training and experience of other agents, it is common for individuals who engage in schemes that involve the fraudulent and criminal solicitation and receipt of payments to attempt to conceal the ill-gotten gains from the scheme through the purchase of goods – including vehicles, clothing, jewelry, travel, and other things of value. Based on my training and experience, and the training and experience of other agents, other things of value include a collection of firearms, which can be very high in monetary value.

15.     There is therefore probable cause to believe that SUBJECT RESIDENCE 2, more fully described in Attachment A, will contain evidence of the TARGET OFFENSES, as more fully described in Attachment B, and that the firearms will constitute evidence of those crimes.

## CONCLUSION

16.     I submit that this affidavit supports probable cause for a warrant to search the

PREMISES described in Attachment A and seize the items described in Attachment B.

Respectfully submitted.

Thomas D. Long
Special Agent
Federal Bureau of Investigation

Subscribed and sworn telephonically and signed electronically on January 18, 2024

KAREN B. MOLZEN
UNITED STATES MAGISTRATE JUDGE

6

ATTACHMENT A

*Property to Be Searched*

The property to be searched is 412 Judith Lane SW, Albuquerque, New Mexico, 87121 (hereinafter "SUBJECT PREMISES 2"), further described as a two-story tan stucco single-family house built in 1977 with a stucco gate in front and "412" painted on the curb.

The search of the above SUBJECT PREMISES 2 shall include the entire residence, all attached and unattached garages and storage areas/containers (including mailboxes and trash cans) on the SUBJECT PREMISES 2 in or on which the items to be seized could be concealed, and all vehicles (including a gray 2024 Lexus with New Mexico temporary tag 24T007842, and a 2019 Dodge RAM 3500 with New Mexico plate 79780US), sheds and persons located on the SUBJECT PREMISES 2 in or on which the items to be seized could be concealed.

A photograph of SUBJECT PREMISES 2 is below:



1

KBM



2

KBM



3

KBM

**ATTACHMENT B**

*Property to be seized*

1.      All records relating to violations of 18 U.S.C. § 1951 (Hobbs Act extortion under color of official right); 18 U.S.C. § 1952 (Travel Act interstate travel or transportation in aid of racketeering enterprises); 18 U.S.C. § 371 (conspiracy); 18 U.S.C. § 666 (bribery); 18 U.S.C. § 1343 (wire fraud); 18 U.S.C. §§ 1343, 1346 (honest services wire fraud); and 18 U.S.C. § 2 (aiding and abetting), those violations involving a scheme to obtain payments in exchange for an officer refraining from filing charges or from appearing for interviews or court settings, and involving Thomas CLEAR, Ricardo MENDEZ, Joshua MONTANO, Honorio ALBA, Harvey JOHNSON, and/or Nelson ORTIZ, since May 1, 2009, including:

a.      Driver's licenses (other than those belonging to Ricardo MENDEZ, Thomas CLEAR, or other persons at the SUBJECT PREMISES at the time of the search);

b.      Records reflecting how payments were tracked for DWI offenders who were targeted under this scheme;

c.      All records related to payments to Thomas CLEAR, Ricardo MENDEZ, Joshua MONTANO, Honorio ALBA, Harvey JOHNSON, Nelson ORTIZ, or other officers involved in this scheme;

d.      Records and information related to the following alleged DWI offenders:



1

KBM

2



KBM



3

KBM



e. Evidence related to the purchase of goods – including vehicles, clothing, jewelry, travel, firearms, or other things of value – with criminal proceeds;

f. Bulk cash, currency, or other financial instruments above $1,000 in value that constitute proceeds of or are intended to facilitate the scheme described above;

g. Messages, notes, correspondence, and/or communications between co-conspirators;

h. Records, receipts, bank statements and records, money drafts, letters of credit, money orders and cashier's checks received, passbooks, bank checks, safe deposit box keys, vault keys and other items evidencing the obtaining, secreting, and/or concealment, and/or expenditures of money;

i. Photographs or videos of Thomas CLEAR, Ricardo MENDEZ, Honorio ALBA, Joshua MONTANO, Nelson ORTIZ, Harvey JOHNSON, their co-conspirators, and the property and assets purchased with proceeds of the criminal scheme;

j. Any and all wireless telephones, digital media, and storage media that reasonably appear to contain some or all of the records, information.

2. For any computer or storage medium whose seizure is otherwise authorized by this warrant, and any computer or storage medium that contains or in which is stored records or information that is otherwise called for by this warrant (hereinafter, "COMPUTER"), in addition to the material described above:

4                                                    *KBM*

a. evidence of who used, owned, or controlled the COMPUTER at the time the things described in this warrant were created, edited, or deleted, such as logs, registry entries, configuration files, saved usernames and passwords, documents, browsing history, user profiles, email, email contacts, "chat," instant messaging logs, photographs, and correspondence;

b. evidence of software that would allow others to control the COMPUTER, such as viruses, Trojan horses, and other forms of malicious software, as well as evidence of the presence or absence of security software designed to detect malicious software;

c. evidence of the lack of such malicious software;

d. evidence indicating how and when the computer was accessed or used to determine the chronological context of computer access, use, and events relating to crime under investigation and to the computer user;

e. evidence indicating the computer user's state of mind as it relates to the crime under investigation;

f. evidence of the attachment to the COMPUTER of other storage devices or similar containers for electronic evidence;

g. evidence of counter-forensic programs (and associated data) that are designed to eliminate data from the COMPUTER;

h. evidence of the times the COMPUTER was used;

i. passwords, encryption keys, and other access devices that may be necessary to access the COMPUTER;

KBM

j.   documentation and manuals that may be necessary to access the COMPUTER or to conduct a forensic examination of the COMPUTER;

k.   records of or information about Internet Protocol addresses used by the COMPUTER;

l.   records of or information about the COMPUTER's Internet activity, including firewall logs, caches, browser history and cookies, "bookmarked" or "favorite" web pages, search terms that the user entered into any Internet search engine, and records of user-typed web addresses;

m.   contextual information necessary to understand the evidence described in this attachment.

As used above, the terms "records" and "information" includes all forms of creation or storage, including any form of computer or electronic storage (such as hard disks or other media that can store data); any handmade form (such as writing); any mechanical form (such as printing or typing); and any photographic form (such as microfilm, microfiche, prints, slides, negatives, videotapes, motion pictures, or photocopies).

The term "computer" includes all types of electronic, magnetic, optical, electrochemical, or other high speed data processing devices performing logical, arithmetic, or storage functions, including desktop computers, notebook computers, mobile phones, tablets, server computers, and network hardware.

The term "storage medium" includes any physical object upon which computer data can be recorded.  Examples include hard disks, RAM, floppy disks, flash memory, CD-ROMs, and other magnetic or optical media.

6

KBM

This warrant authorizes a review of electronic storage media and electronically stored information seized or copied pursuant to this warrant in order to locate evidence, fruits, and instrumentalities described in this warrant.  The review of this electronic data may be conducted by any government personnel assisting in the investigation, who may include, in addition to law enforcement officers and agents, attorneys for the government, attorney support staff, and technical experts.  Pursuant to this warrant, the FBI may deliver a complete copy of the seized or copied electronic data to the custody and control of attorneys for the government and their support staff for their independent review.

The review of all evidence seized as a result of this warrant with be subject to the filter protocols set forth in the affidavit.

7

KBM